## KRONE v. KEYSTONE MOTOR CO.

No. 9812.

United States Court of Appeals
Seventh Circuit.

Dec. 12, 1949.

Kernal Freeman, Harry Freeman, Chicago, Illinois, for appellant.

Seymour J. Frank, Paul A. H. Shults, Chicago, Illinois, for appellee.

Before MAJOR, Chief Judge, KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brings this action under Sec. 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., seeking treble damages for an alleged overcharge arising out of a sale by defendant to plaintiff of a new 1946 Chevrolet automobile. The alleged overcharge resulted from a reduced allowance on a 1940 Chevrolet which plaintiff traded in as part of the purchase price. The case was tried by the court without a jury, and judgment was entered in favor of plaintiff for treble damages, in the sum of $1,067.52, plus costs and $250 attorney fees.

Only three witnesses testified at the trial: the plaintiff, McAtee, the sales manager of defendant, and Smith, the service manager of defendant. Plaintiff testified that he used his 1940 Chevrolet in his business almost daily from the date of its purchase, that the car had been kept nightly in a garage, and that from time to time he had taken it in for repairs as needed. Plaintiff testified that at the time of the trade-in his automobile was in good running condi-

tion, that there was nothing wrong with the steering gear, clutch or brakes, that the condition of the paint was good, and that the four fenders, with reference to bumps, and tears, were in good condition. Plaintiff had been driving his car about Chicago every day until the morning of May 22, 1946, when he traded it to the defendant.

When plaintiff brought his automobile to defendant's garage on May 22, McAtee, the sales manager, was present but did not examine the car other than casually, nor did he make the appraisal. Smith examined the car but did not get underneath it or have it hoisted up for inspection. Smith made a list of repairs which he said were needed, their estimated cost being $447.60. When plaintiff went to McAtee's office the latter told him that because of the needed repairs, $177.27 was all that could be allowed on a trade-in of plaintiff's automobile. When plaintiff protested McAtee said, "That is what it is going to be. You can take it or leave it." It was stipulated that the established "as is" price of a 1940 Chevrolet of the type traded in by plaintiff was $622.46.

Maximum Price Regulation 594 set maximum prices for new passenger automobiles. In Sec. 23(d) the reasonable value of a used car traded in on a new automobile was defined as follows:

"* * * for the purposes of this regulation, means the amount determined by subtracting the charges for repairs and replacements at retail under applicable maximum price regulations needed to place the car traded in good operating condition as defined in section 7(b) of Maximum Price Regulation 540 from the lower of the following figures:

"(1) The applicable 'as is' price for the used car permitted by Maximum Price Regulation 540; or

"(2) The fair market value for the top grade used car of the same make, model, body type, passenger capacity and wheel base sold 'as is' to a customer by the class of seller to which the seller belongs."

Section 7(b) of Maximum Price Regulation 540, which defined "good operating condition," read: "A used car is in good operating condition when its functional parts, and those of its nonfunctional parts which are customarily attached to a car, are in a condition that will permit the used car to be driven safely and efficiently. Functional parts include, but are not limited to: chassis, motor, clutch, transmission, drive shaft, differential, steering mechanism, front axle, rear axle, brakes, battery and lighting system."

Smith had listed some 20 items of repairs. The trial court concluded that five of them, totaling $91.35, were proper items; it disallowed the others, including such as "St. & Ref. body panel below deck lid" ($105.00), and "Re-panel L. door & Ref." ($37), and other items pertaining to body and fender.

True it is that on the witness stand Smith painted a picture of plaintiff's automobile as being little better than a pile of junk which could be operated, but such testimony undoubtedly discredited him as a witness in the eyes of the court. Smith testified, "The left rear side of the body, the complete side, you could take your finger and poke it through the body. It was all rusted out. That I have a vivid recollection of it. The rest of it I don't remember too strongly. I do know that it needed a door. I don't know which side it was on. There was one door rusted out completely. One whole quarter of the body was completely gone. * * * The metal was all rusting out from the inside." On cross-examination Smith admitted that many of the items on his list were not necessary to put the car in good running condition. McAtee testified that the repairs were needed to put the car in "perfect running condition," and Smith also stated that such repairs were necessary to put the car in good operating condition or for purposes of resale.

Defendant makes much of the fact that 16 months prior to the date of the trade-in, plaintiff's automobile had been damaged in a fire in a gararge where the automobile was kept. But the testimony also showed that after the fire plaintiff had taken his automobile to the defendant for a complete

new paint job and for straightening and repairing the body of the car, and that the defendant had been paid $180 for this repair job.

We have referred to the evidence in some detail. It is apparent that in many respects it was conflicting. The trial judge had the opportunity to judge and determine upon the credibility of the witnesses. It is apparent that in a large measure he disbelieved the two who testified for the defendant. Upon the state of the record we cannot say that the court's finding that plaintiff was overcharged $355.84 on the purchase of the new Chevrolet was clearly erroneous.

The question of treble damages allowed by the trial court remains for our consideration. Sec. 205(e) of the Emergency Price Control Act of 1942 provides that the court may allow treble damages where the violation is willful or where the defendant failed to take practicable precautions against the occurrence of the violation. Viewing the evidence most favorable to the plaintiff, the trial court could properly conclude that at the time of the trade-in, when new automobiles available for sale were exceedingly scarce, defendant deliberately padded the list of repairs necessary to put plaintiff's automobile in good operating condition so that it could be run safely and efficiently. Such conduct was at the same low level as the cash-under-the-table in black market trades prevalent during the period when this transaction took place. " * * * In Bowles v. Hasting, 5 Cir., 146 F.2d 94, 95, the court * * * stated: 'The burden is on the defendant to show both an absence of wilfulness, and the presence of care to prevent the occurrence of violations.' " Bowles, Administator, Office of Price Administration, v. Krodel, 7 Cir., 149 F.2d 398, 400.

The record does not contain any evidence which would indicate that the defendant took practicable precautions against the occurrence of a violation, nor an absence of willfulness on its part, and we therefore do not disturb the conclusion of the trial court that treble damages should be assessed.

Judgment affirmed.